No. 12582

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

DONALD FLAMM,

Defendant and Appellant.

---

Appeal from: District Court of the Thirteenth Judicial District, Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellant:

Robert L. Stephens, Jr. argued, Billings, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena, Montana
Thomas J. Beers, Assistant Attorney General, argued, Helena, Montana
Harold F. Hanser, County Attorney, Billings, Montana
Charles A. Bradley, Deputy County Attorney, argued, Billings, Montana

---

Submitted: June 17, 1974

Decided: SEP 4 - 1974

Filed: SEP 4 - 1974

*Thomas J. Kearney*
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant was convicted of manslaughter by jury verdict in the district court of Yellowstone County. He now appeals from the judgment of conviction.

Defendant Donald J. Flamm, Jr. shot Roger Clement, a security guard for the Char-El Mobile Homes sales lot in Billings, Montana. The shooting occurred about 4:00 a.m. on Christmas morning, 1972, on South Billings Boulevard less than a quarter mile south of the Char-El sales lot. The victim died 18 days later from the gunshot wounds.

Defendant was charged with first degree murder. The State contended throughout the trial that defendant committed an intentional and premeditated killing with malice. Defendant admitted the shooting but claimed self-defense.

The principal conflicts in the evidence are mirrored in the testimony of Fred B. Vickery for the State, and Al Yocky and defendant for the defense.

Vickery was a security guard for the nearby Premier Mobile Homes sales lot. He testified that when he arrived at the scene of the shooting, three men were struggling in front of the head-lights of Clement's station wagon parked some ten feet behind the defendant's Volkswagen. The three men suddenly "sort of exploded apart" with Clement taking two or three steps backward with his empty hands upraised. Defendant shot Clements with a pistol at close range, spinning him around to his right. Defendant then shot Clements twice more in the back. Clements fell to the ground.

Thereupon, defendant pointed the pistol in the direction of Vickery, who was sitting behind the wheel of his parked pick-up. Defendant shot at Vickery twice. Defendant and Al Yocky, his companion, then jumped into defendant's Volkswagen and proceeded south on South Billings Boulevard.

Vickery pursued them in his pickup. He pulled alongside the Volkswagen twice and bumped it from the side without result. The third time Vickery knocked the Volkswagen off the road and disabled it. Defendant and Yocky fled on foot across a field to the west.

Defendant and Yocky had a different version of the shooting. Their testimony indicated that Clement, unknown and unidentified, stopped them and asked defendant for his driver's license. Defendant got out of his Volkswagen and was searching through his wallet for his driver's license. Clement then hit defendant, knocking off his glasses. At the same time Clement pulled a gun on defendant. Defendant tried to knock the gun from Clement's hand, at the same time reaching into the Volkswagen and pulling out his own pistol by the barrel. A struggle ensued. Defendant's pistol discharged accidentally. Defendant thought he was dead and "just started shooting".

Thereafter Vickery drove his pickup right at defendant attempting to run over him. Defendant stepped aside and fired at Vickery's windshield.

In the resulting commotion, defendant and Yocky got into defendant's Volkswagen and proceeded south on South Billings Boulevard. They were rammed several times by the pursuing Vickery pickup. They stopped and fled across a field on foot.

On appeal, defendant seeks a new trial. He contends that three procedural errors affected his substantial rights and deprived him of a fair trial: (1) the admission of a police officer's testimony that he gave defendant the "Miranda warning" and defendant exercised his rights thereunder; (2) improper rebuttal testimony by the State's principal witness; and, (3) improper final argument by the special prosecutor.

During the State's case-in-chief, the following testimony

was elicited from Officer Kenneth Nordlund of the Billings Police Department on direct examination by the State:

> "Q.   After you went through this procedure [giving the Miranda warning to defendant] what did the Defendant say to you?  A. He stated that he did not want to talk to me at this time, that he wanted to talk to a lawyer before any questions was asked." [Bracketed phrase added.]

Defendant objected that it was improper to bring before the jury testimony indicating that he did not want to talk to the police because inferentially it indicated that he had something to hide.  The district judge overruled the objection and admitted the testimony.  The basis was that the testimony "has a bearing on the question of voluntariness with respect to the waiver in those instances where he did waive."

In the context of the instant case, we hold the admission of this testimony to be error.  The testimony relates to a conversation between a police officer and the defendant that occurred around 8:00 p.m. on Christmas day.  The trial record is barren of any waiver by defendant of his Fifth Amendment rights thereafter.  It is equally barren of any subsequent statement, admission, or confession by the defendant.  Under such circumstances, the relevance of the testimony to any issue in the case is lacking.

Footnote 37 of the majority opinion in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L ed 2d 694, 720, 10 ALR3d 974, explains the prohibition in this language:

> "In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation." (Citations omitted.)

While this prohibition is applicable here, the U.S. Supreme

- 4 -

Court has also held that a constitutional error can be regarded as harmless if the State proves "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L ed 2d 705, 24 ALR3d 1065.

Here there was a mere passing reference by the State's witness to the defendant's exercise of his constitutional rights. The State made no attempt to emphasize, further pursue, or even refer to this testimony in its argument to the jury. Furthermore the defendant testified fully at the trial, thereby overcoming any significance which the jury might have attached to his failure to respond during the custodial interrogation. Finally, the record contains overwhelming evidence in support of the jury's verdict. Under these circumstances, the error was harmless and therefore cannot be grounds for reversal. United States v. Faulkenbery, 472 F.2d 879 (9th Cir. 1973); Shepp v. State, 87 Nev. 179, 484 P.2d 563; State v. Geter, 108 R.I. 933, 276 A.2d 274; People v. Key, (Colo.) 522 P.2d 719.

Defendant also contends that the testimony of Vickery, called in rebuttal, was improper, in that he merely repeated testimony which he gave during the State's case-in-chief. It is alleged that this placed undue emphasis on the testimony of the State's principal witness.

We disagree. Section 95-1910(c), R.C.M. 1947 governs the order of proof in a criminal trial. It provides:

> "The parties may then [after the case for the defense] respectively offer rebutting testimony only, unless the court, for good cause, permits them to offer evidence upon their original case." (Bracketed phrase added.)

Here the district court permitted Vickery to testify only after determining, in chambers, that the testimony would not be a repeat of that given earlier. The direct testimony

given in rebuttal covers only a page of the transcript, thus negating any possibility of undue emphasis of Vickery's earlier testimony. The district court clearly did not abuse its discretion in permitting such testimony. State v. Crockett, 148 Mont. 402, 421 P.2d 722; 6 Wigmore, Evidence §1873 (3rd ed. 1940).

Defendant's final claim of error concerns remarks made to the jury during the state's final argument. Defendant claims that these remarks appeal to social and class prejudice and offer conclusions not founded in the evidence.

The remarks concern references to defendant's association with the "dregs of society" and the drug culture. Our review of the record indicates that while these remarks were harsh and probably offensive to the defendant, they were supported by the evidence and reasonable inferences therefrom.

The record discloses that at the time of the shooting, defendant was in the company of Al Yocky--a man who had just been released pending deferred imposition of sentence for possession and sale of dangerous drugs. At the time of the trial, defendant's brother was in custody in the same courthouse on a drug charge. Defendant was enroute to this brother's home at the time the shooting occurred. Defendant testified that he had been threatened by members of the "dope scene" because of a debt owed them by his brother.

Given this evidence, the state's comments were surely founded on reasonable inferences from the testimony, if not from the testimony itself. We find no infringement of a substantial right of the accused, and therefore no reversible error. State v. Watkins, 156 Mont. 456, 481 P.2d 689.

As the United States Supreme Court recently said:

> " * * * the law does not require that a defendant receive a perfect trial, only a fair one * * *." State v. Tucker, 42 U.S.L.W. 4887, 4891 (U.S. June 10, 1974)

- 6 -

The record here demonstrates that defendant received a fair trial. Accordingly, the conviction of the defendant is affirmed.

_____
                    Justice

We concur:

_____

_____
Justices

_____
Hon. M. James Sorte, District
Judge, sitting in place of Mr.
Chief Justice James T. Harrison.

Mr. Justice Wesley Castles specially concurring:

I concur in the result but do not agree that any error occurred on issue No. 1. I agree that if any error occurred it was harmless.

_____
                    Justice