No. 02-277

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 348

STATE OF MONTANA,

       Plaintiff and Respondent,

  v.

WILLIAM HOPKINS RINKENBACH,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and for the County of Flathead, Cause No. DC-01-192(C)
The Honorable Stewart E. Stadler, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Helena, Montana

      For Respondent:

          Hon. Mike McGrath, Attorney General; John Paulson,
Assistant Attorney General, Helena, Montana

          Ed Corrigan, Flathead County Attorney; Richard M. Hickel,
Deputy County Attorney, Kalispell, Montana

Submitted on Briefs:  June 26, 2003

Decided:  December 18, 2003

Filed:

_____
Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 William Hopkins Rinkenbach (Rinkenbach) appeals from the judgment entered by the Eleventh Judicial District Court, Flathead County, on his conviction and sentence for the offense of assault on a peace officer. We reverse in part and remand for resentencing.

¶2 Rinkenbach raises the following issues:

¶3 1. Did the District Court commit plain error in instructing the jury?

¶4 2. Did Rinkenbach receive ineffective assistance of counsel?

¶5 3. Did the District Court err in sentencing Rinkenbach by requiring him to pay restitution, fines and court costs without adequate evidentiary foundation?

## BACKGROUND

¶6 In July of 2001, the State of Montana (State) charged Rinkenbach by information with the felony offenses of assault on a peace officer and criminal possession of dangerous drugs. The charges were based on circumstances surrounding a late night encounter between Rinkenbach and Deputy Patrick Ward (Ward) of the Flathead County Sheriff's Office. The drug possession charge subsequently was dismissed, the case proceeded to trial on the assault charge and the jury found Rinkenbach guilty of the offense of assault on a peace officer. The District Court sentenced Rinkenbach and entered judgment on the conviction and sentence. Rinkenbach appeals.

## DISCUSSION

¶7 1. Did the District Court commit plain error in instructing the jury?

2

¶8     The offense of assault on a peace officer is defined as purposely or knowingly causing bodily injury to a peace officer.  Section 45-5-210(a), MCA.   The District Court gave the jury Instruction 11 at the close of trial, which states as follows:

> Purpose and knowledge ordinarily may not be proved directly because there is no way of fathoming or scrutinizing the operations of the human mind.  But you may infer the Defendant's state of mind, including his purpose and knowledge, from the Defendant's acts and all other facts and circumstances in evidence which indicate his state of mind.  In this case, the State is only required to prove the Defendant acted voluntarily.

During deliberations, the jury sent the District Court a note indicating a perceived lack of clarity in the use of the word "voluntarily" in Instruction 11, and asking the court to either reword the instruction or inform them whether voluntarily constitutes purpose and knowledge.  Rinkenbach's counsel, the State and the court consulted and agreed not to respond to the question.  The court had the bailiff tell the jury it must rely on the instructions as given.

¶9     Rinkenbach contends the District Court erred in giving the jury this instruction.  He asserts the final sentence of the instruction confused the jury and lessened the State's burden of proving beyond a reasonable doubt that he acted purposely or knowingly.

¶10    Rinkenbach also contends the District Court erred in giving the jury Instruction 12, which stated that

> [a] person is not authorized to use force to resist an arrest which he knows is being made by a peace officer even if he believes that an arrest is unlawful and the arrest in fact is unlawful.

Rinkenbach asserts that Instruction 12 was prejudicial in that it was inapplicable in this case because he was not charged with resisting arrest and likely distracted the jury from

considering the elements of the assault on a peace officer offense with which he was actually charged.

¶11    In response, the State first asserts that we should decline to address Rinkenbach's claims of instructional error because he failed to object to the instructions at the time they were offered and failed to request a curative instruction when the jury questioned the meaning of Instruction 11 and, indeed, agreed not to respond.  Generally, we will not review jury instructions where the party asserting error did not object to the instructions at the time they were proposed.  See § 46-16-410(3), MCA; State v. Earl, 2003 MT 158, ¶ 23, 316 Mont. 263, ¶ 23, 71 P.3d 1201, ¶ 23.

¶12    Rinkenbach concedes that he did not object to the given instructions and did not offer an alternative instruction when the jury sent out its question on Instruction 11.  He asserts, however, that we should review the merits of his claims of instructional error under the common law plain error doctrine.  With regard to Instruction 11, Rinkenbach relies on State v. Sigler (1984), 210 Mont. 248, 688 P.2d 749, for the proposition that plain error review is appropriate when an appellant asserts instructional error regarding the mental state element of the charged offense.

¶13    We may discretionarily review claimed errors--even absent timely objection--which implicate a defendant's fundamental constitutional rights where failing to review the claimed error may result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings or compromise the integrity of the judicial process. State v. Daniels, 2003 MT 247, ¶ 20, 317 Mont. 331, ¶ 20, 77 P.3d 224, ¶ 20 (citation

4

omitted). Common law plain error review should be employed sparingly, on a case-by-case basis, and is not to be used as a prophylactic for errors made by careless counsel. Daniels, ¶ 20; Earl, ¶ 25. Moreover, Rinkenbach's reliance on Sigler notwithstanding, we have declined to invoke plain error review of asserted instructional error regarding the mental state element of an offense. See Earl, ¶¶ 21 and 26.

¶14 In this case, our review of the record indicates Rinkenbach has not demonstrated that his asserted instructional errors constitute fundamental unfairness amounting to plain error. In other words, failing to review his claimed errors will not result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings or compromise the integrity of the judicial process. Consequently, we decline to invoke plain error review.

¶15 2. Did Rinkenbach receive ineffective assistance of counsel?

¶16 Rinkenbach asserts he received ineffective assistance of counsel at trial because his counsel failed to object to jury Instruction 11, failed to offer a curative instruction when the jury expressed confusion over Instruction 11, and failed to offer an instruction giving the jury the option of convicting him of the lesser offense of resisting arrest. In addressing ineffective assistance of counsel claims, we apply the two-prong test from Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, which requires a defendant to establish that his counsel's performance fell short of the range of competence required of attorneys in criminal cases and the deficient performance was prejudicial to the defendant's

5

case.  See State v. Hendricks, 2003 MT 223, ¶ 6, 317 Mont. 177, ¶ 6, 75 P.3d 1268, ¶ 6 (citations omitted).

¶17    With regard to the first prong of the Strickland test, we have held that, in a direct appeal, there must be evidence of record establishing the reasons underlying counsel's allegedly deficient conduct in order to determine whether counsel's actions fell short of the range of reasonable professional conduct.  Hendricks, ¶ 9 (citations omitted).  Where the record contains insufficient evidence on which to make that determination, an ineffective assistance of counsel claim should be raised in a postconviction relief proceeding, and the direct appeal of that issue should be dismissed.  Hendricks, ¶ 10 (citations omitted).

¶18    Here, the record before us is silent regarding the reasons underlying counsel's actions.  Because the record is insufficient to determine whether counsel rendered ineffective assistance, we conclude it is more appropriate for this issue to be raised via a postconviction relief proceeding.  Consequently, this issue is dismissed without prejudice to its being raised in such a proceeding.

¶19    3. Did the District Court err in sentencing Rinkenbach by requiring him to pay restitution, fines and court costs without adequate evidentiary foundation?

¶20    On January 14, 2002, the District Court held a sentencing hearing, following which it sentenced Rinkenbach to the Montana State Prison for an eight-year term with three years suspended.  In addition, the court ordered Rinkenbach to pay $1,721.95 in restitution for the medical expenses incurred by Ward as a result of the altercation, $500 in public defender fees and a $1,000 fine.  Rinkenbach contends that the District Court erred in ordering him to pay the restitution, public defender fees and fine because the court did not comply with the

6

statutory procedures governing their imposition. Consequently, according to Rinkenbach, the portion of his sentence requiring him to pay these monies is illegal and should be stricken. We review a district court's sentence for legality only and confine our review to determining whether the sentence is within statutory parameters. State v. Pritchett, 2000 MT 261, ¶ 6, 302 Mont. 1, ¶ 6, 11 P.3d 539, ¶ 6.

¶21 The State concedes that §§ 46-18-244, -242, -231 and -112, MCA, require a district court to receive evidence regarding the victim's pecuniary loss, as well as the defendant's financial resources, and to consider the financial resources of the defendant and his or her ability to pay when determining whether to impose restitution, fines and public defender fees as part of a criminal sentence. The State also does not dispute that the presentence investigation report did not contain documentation of Ward's medical expenses or Rinkenbach's financial status, the District Court did not receive evidence at the sentencing hearing regarding those matters, and the written sentencing report contains no findings of fact in that regard. However, while conceding that the District Court's order that Rinkenbach pay restitution, public defender fees and a fine is illegal, the State contends that the case should be remanded for resentencing so that the court may conduct an evidentiary hearing.

¶22 In State v. Brown (1994), 263 Mont. 223, 227, 867 P.2d 1098, 1101, we held that the district court erred in sentencing Brown to pay restitution where the presentence investigation report contained no documentation of the victim's pecuniary loss or Brown's financial status, and the court failed to consider his financial resources and ability to pay when it imposed restitution. However, we rejected Brown's request to simply vacate the restitution portion

7

of the sentence. Because the record was devoid of evidence relating to the statutory considerations to be made in imposing restitution, we were in no better position than the district court to determine the amount of, or Brown's ability to pay, restitution. For that reason, we remanded for further proceedings regarding the restitution portion of the sentence. Brown, 263 Mont. at 229, 867 P.2d at 1102.

¶23 As in Brown, the record before us in this case is devoid of evidence documenting either the appropriate amount of--or Rinkenbach's ability to pay--the restitution, fine and public defender fees. Consequently, we conclude this case must be remanded for an evidentiary hearing in the District Court, followed by an amended sentence and judgment, regarding the restitution, fine and public defender fees portions of Rinkenbach's sentence.

¶24 Reversed in part and remanded for further proceedings consistent with this Opinion.

/S/ KARLA M. GRAY

We concur:

/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ JOHN WARNER

Justice John Warner specially concurring.

¶25 I concur in the decision of the Court. I write separately in response to the dissents.

¶26 The dissents are correct in that the Court is required to engage in a plain error analysis in order to determine that the doctrine does not apply. It is necessary to examine the record, which was done as stated in ¶ 14, and, after the analysis, the Court reached the conclusion that the asserted instructional errors do not result in a manifest miscarriage of justice, do not leave unsettled a question of the fundamental fairness of the trial, or do not compromise the integrity of the judicial process. *See State v. Finley* (1996), 276 Mont. 126, 137, 915 P.2d 208, 215, *overruled on other grounds by State v. Gallagher*, 2001 MT 39, ¶ 21, 302 Mont. 215, ¶ 21, 19 P.3d 817, ¶ 21.

¶27 Instruction No. 11, along with Instruction No. 8, which instruct on the necessity of a voluntary act, and the definitions of knowledge and purpose contained in Instruction Nos. 9 and 10, gave the jury instructions on the law concerning the necessity that Defendant act voluntarily. These instructions, along with Instruction Nos. 13 and 14, which both clearly and unequivocally require that the Defendant act with purpose or knowledge before he can be convicted, adequately instructed the jury. They are sufficient for the Court to conclude that Defendant had a fundamentally fair, if not perfect, trial. A defendant is entitled to a fair trial, not a perfect trial. A perfect trial is not possible. *State v. Powers* (1982), 198 Mont. 289, 300, 645 P.2d 1357, 1363; *State v. Flamm* (1974), 165 Mont. 128, 134, 526 P.2d 119, 122.

¶28 There are other important facts shown by the record, that must be taken into account in this case, that show that the integrity of the judicial process is not compromised by the result herein, and the conviction should not be reversed because of plain error. When the jury

9

raised a question concerning the use of the term "voluntary," along with the requirement of purpose or knowledge, the District Court acted properly by summoning the parties and soliciting their opinions. Defendant's counsel agreed that the jury should simply be told to consider the instructions as given. This Court must not simply assume that Defendant's counsel was careless, much less ineffective, in agreeing to this course of action. Most likely he was not at all careless.

¶29 It is probable that, when the jury expressed some confusion, Defendant's trial counsel figured that his client was presented with a win-win situation. Astute counsel could well reason that if there was some jury confusion about what the prosecution had to prove, there was a good chance that such would lead to his client being acquitted; a verdict from which the State could not appeal. On the other hand, considering the jury's question, counsel could reject any offer the judge might make to correct the situation, and thereby create another ground for an appeal in the event of a conviction. Of course, there is no way to find out what the truth of the matter is without exploration in postconviction proceedings; which option is available under our decision today.

¶30 I concur with the Court's decision.

/S/ JOHN WARNER

Justice James C. Nelson dissents.

¶31     I dissent from the Court's decision on Issue 1. I would reverse and remand for a new trial because of instructional error. I would, therefore, not address Issues 2 or 3.

¶32     The majority decline to engage in plain error review of a patently incorrect statement of the law in Instruction 11. It was not the State's obligation to "only" prove that the defendant acted voluntarily. Rather, as stated in Instructions 13 and 14, it was the State's burden to prove beyond a reasonable doubt that Rinkenbach acted purposely or knowingly.

¶33     The trial court's instructions were inconsistent with each other. And, indeed the record shows that the jury did not understand what the State's mental state burden of proof was. During deliberations, the jury sent out a question expressing its confusion about the voluntary element of Instruction No. 11:

> Question: Instruction #11 is unclear in regards to the word voluntarily. Could you re-word this? Does voluntarily constitute purpose or knowledge?

¶34     As a result, it is impossible for this Court, on appellate review, to know whether the State met its burden of proof--i.e., did the jury believe that Rinkenbach merely acted voluntarily or did it find, as it must, that he acted purposely or knowingly?

¶35     Ostensibly to punish "careless counsel," the majority ignore this Court's decision in *State v. Sigler* (1984), 210 Mont. 248, 688 P.2d 749, *overruled in part by State v. Rothacher* (1995), 272 Mont. 303, 308-10, 901 P.2d 82, 85-87, and, instead, apply *State v. Earl*, 2003 MT 158, 316 Mont. 263, 71 P.3d 1201. This approach is flawed in several respects.

¶36     First, it is not "careless" defense counsel who will suffer from the trial court's failure to properly instruct the jury, it is Rinkenbach. Second, our case law is clear:

11

The duty of the trial court to instruct the jury has been generally recognized as one that is necessary and inherent in the court.

" * * * In instructing the jurors, we must assume that they have no knowledge of the rules of law and that therefore, they must be instructed on all points of law which, under any reasonable theory, might be involved in their deliberations, to the end that their decision will be according to the law and the evidence and untinged by any private and possibly false opinion of the law that they entertain."

*While the necessity to instruct and to properly instruct is no doubt greater in a criminal case because of the fundamental constitutional protections, the above statement serves to underline the importance of the trial judge's function to instruct the jury in all cases--civil as well as criminal. That duty cannot be delegated to counsel.*

Jury instructions are crucial to a jury's understanding of the case and, unfortunately, counsel cannot always be relied upon to provide those instructions.

"It is the inescapable duty of the trial judge to instruct the jurors, fully and correctly, on the applicable law of the case, and to guide, direct, and assist them toward an intelligent understanding of the legal and factual issues involved in their search for truth. The court must instruct the jury properly on the controlling issues in the case even though there has been no request for an instruction or the instruction requested is defective."

*Billings Leasing Co. v. Payne* (1978), 176 Mont. 217, 224-25, 577 P.2d 386, 390-91 (internal citations omitted; emphasis added). Accordingly, the District Court's failure to properly instruct the jury cannot be foisted off on "careless counsel."

¶37 Third, neither *Sigler* nor *Earl* support the Court's decision. In *Sigler,*[1] we engaged in plain error review, notwithstanding the defendant's failure to object to the trial court's instructions. *Sigler*, 210 Mont. at 257, 688 P.2d at 753-54. We discussed at length and

---

[1] This case was decided long before this Court's decision in *State v. Finley* (1996), 276 Mont. 126, 915 P.2d 208, *overruled on other grounds by State v. Gallagher*, 2001 MT 39, 304 Mont. 215, 19 P.3d 817.

within the context of jury confusion the interplay between the mental states of purposely and knowingly and the requirement that the defendant act voluntarily. In *Sigler* the District Court correctly instructed the jury, and the instructions which we affirmed contained none of the inconsistent use of terms as did those in the case at bar. *Sigler*, 210 Mont. at 256-61, 688 P.2d at 753-55.

¶38   *Earl* also involved claims of instructional error raised for the first time on appeal with a request for plain error review. *Earl*, ¶¶ 22-25. Without citation to or consideration of *Sigler*, we stated that we would not engage in plain error review so as not to provide "a prophylactic for careless counsel," *Earl*, ¶ 25. Nonetheless, as Justice Regnier, the author of *Earl*, explains in his dissent, the Court did, in fact, review the record and, did, in fact, determine on the basis of that review that the trial court had properly instructed the jury. Moreover, it was on the basis of this review that the *Earl* Court determined that the threshold question under *Finley*--whether failing to review would result in a "manifest miscarriage of justice, leave unsettled the question of fundamental fairness . . . or compromise the integrity of the judicial process"--should be answered in the negative. *Earl*, ¶ 26.

¶39   Thus, while nominally declining to engage in plain error review, the *Earl* Court, nevertheless, did exactly that. The Court simply determined, however, that there was no plain error. Indeed, because there is nothing procedurally or factually that distinguishes *Earl* from *Sigler*, it is clear that neither case supports the majority's decision here.

¶40   As to the concurrence, while the accused is not entitled to a perfect trial, he is constitutionally entitled to a fair trial. *Lutwak et al. v. United States* (1953), 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593; *Brown et al. v. United States* (1973), 411 U.S. 223,

13

231, 93 S.Ct. 1565, 1570, 36 L.Ed.2d 208; *Michigan v. Tucker* (1974), 417 U.S. 433, 446, 94 S.Ct. 2357, 2365, 41 L.Ed.2d 182. *State v. Flamm* (1974), 165 Mont. 128, 134, 526 P.2d 119, 122. The concurring Justice can speculate all day about what was in the minds of the jury. The fact is he does not know and none of the rest of us do either. What we do know-- from the record itself--is that the jury's note to the trial court stated that they were confused. And, it was the trial court's patently erroneous instructions which confused them.

¶41    Finally, in choosing to ignore, *Billings Leasing* and *Sigler* and in misapplying *Earl*, we have not only failed in our obligation to protect the fundamental rights of the accused to a fair trial--*Finley*, 276 Mont. at 134-35, 915 P.2d at 213-14--but we have also confused this area of the law. While we have punished "careless counsel," we have accomplished little else.

¶42    I dissent.

/S/ JAMES C. NELSON

Justice Patricia O. Cotter joins in the dissent of Justice James C. Nelson.

/S/ PATRICIA COTTER

Justice Jim Regnier dissenting.


¶43    I agree with Justices Nelson and Cotter that the Court erred in reaching the resolution of issue one; similarly, I would reverse and remand for a new trial because of this error and not address issues two and three. As the author of *Earl*, however, I feel compelled to write separately.

15

¶44  At the outset, I agree with Justice Nelson that the Court provided the jury with a patently incorrect statement of law in Instruction No. 11. The offense of assault on a peace officer requires that the perpetrator act purposely or knowingly. Section 45-5-210(a), MCA. By charging the jury as it did, the District Court provided the jury with inconsistent instructions. Given this inconsistency, we are unable to sort out in our review of this case whether the State in fact met its burden of proof. The jury may very well have determined that Rinkenbach acted voluntarily but not purposely or knowingly.

¶45  Now getting down to *Earl*. The Court seems to rely on *Earl* as a bright line for the notion that we do not automatically invoke plain error review in those cases where the jury has been incorrectly instructed on the required mental state for a given offense. On the other hand, Justice Nelson (who did not sit on *Earl*) is critical of *Earl* because it fails to refer to *Sigler* although "there is nothing procedurally or factually that distinguishes *Earl* from *Sigler.*"

¶46  In *Earl*, a sexual assault case, the defendant contended on appeal that the District Court improperly instructed the jury. He sought relief on appeal even though his attorney failed to object to the instructions given or offer any instructions of his own. Specifically, the defendant contended that the District Court failed to instruct the jury on the elements of sexual assault, failed to instruct the jury on a fact that would increase the prescribed statutory penalty and failed to properly instruct on the definitions of "sexual contact," "without consent," and "knowingly."

¶47  Justice Nelson argues that we inconsistently stated in *Earl* that we reviewed the record but did not invoke plain error review. It seems to me that a defendant's constitutional right

16

to a fair trial under the Sixth Amendment of the United States Constitution and Article II, Section 24 of the Montana Constitution is always brought into question when the jury is improperly instructed. The threshold question as stated in *Finley* is whether "failing to review the claimed error at issue may result in a manifest miscarriage of justice, may leave unsettled the question of fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process." *Finley*, 276 Mont. at 137, 915 P.2d at 215. It escapes me how we can go through this process without reviewing the record. When we invoke plain error, we reverse the case.

¶48 When we reviewed the record in *Earl* in its entirety, we concluded that the District Court in fact adequately instructed the jury on the elements of sexual assault, although it did not give the model jury instruction 5-502(a). We further concluded that the District Court adequately instructed the jury on the definitions of "sexual contact," "without consent," and "knowingly." The instructions may not have been what Earl preferred when reflecting on the case and preparing his appellate brief, but a fair reading of the District Court's instructions did not lead the jury down the wrong path in its analysis. Unfortunately, we did not detail this analysis in our opinion, but simply stated that upon our review of the record we saw no reason for invoking plain error review. *Earl*, ¶ 26.

¶49 In contrast to *Earl*, this is not a case where the jury was adequately instructed, but a case where the jury was in fact improperly instructed on the requisite mental element of the offense. In my view this is precisely the type of case that begs for plain error review for the reasons stated above and controlled by our decision in *Sigler*.

17

¶50     All this said, it is still my view that plain error should be used sparingly and on a case-by-case basis.  When this Court determines the applicability of the common law plain error doctrine, it considers the totality of the circumstances in each case.  *State v. Brown*, 1999 MT 31, ¶ 12, 293 Mont. 268, ¶ 12, 975 P.2d 321, ¶ 12.  I am not in favor of any bright line when considering plain error review.

/S/ JIM REGNIER