DA 11-0612

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 179

JARED ROSLING,

       Petitioner and Appellant,

  v.

STATE OF MONTANA,

       Respondent and Appellee.


APPEAL FROM:    District Court of the First Judicial District,
                   In and For the County of Lewis and Clark, Cause No. BDV 2009-445
                   Honorable Jeffrey M. Sherlock, Presiding Judge


COUNSEL OF RECORD:

       For Appellant:

          Joseph P. Howard, Attorney at Law, Great Falls, Montana

       For Appellee:

          Steve Bullock, Montana Attorney General; Tammy K Plubell, Assistant
          Attorney General, Helena, Montana

          Leo J. Gallagher, Lewis and Clark County Attorney; Carolyn A. Clemens,
          Deputy County Attorney, Helena, Montana


                     Submitted on Briefs:  June 27, 2012
                             Decided:  August 21, 2012


Filed:

_____
                         Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Jared Rosling (Rosling) appeals from an order of the First Judicial District Court, Lewis and Clark County, denying his petition for postconviction relief.  We affirm.

¶2     We review the following issues on appeal:

¶3     *1. Whether Rosling received ineffective assistance of counsel during his trial.*

¶4     *2. Whether Rosling received ineffective assistance of counsel during his appeal.*

FACTUAL AND PROCEDURAL BACKGROUND

¶5     A jury found Rosling guilty of deliberate homicide, aggravated kidnapping, aggravated burglary, tampering with or fabricating physical evidence, and criminal possession of dangerous drugs on October 18, 2004.  Attorney Randi Hood (Hood) represented Rosling throughout his criminal proceedings.  The district court sentenced Rosling to life in prison without parole for the homicide conviction.  The court imposed concurrent sentences for the other convictions.

¶6     Rosling filed a notice of appeal. The court appointed attorney William Hooks (Hooks) as Rosling's appellate counsel.  Rosling appealed the district court's denial of his motion to dismiss charges for insufficient evidence.  We affirmed Rosling's convictions and sentences in *State v. Rosling*, 2008 MT 62, ¶ 1, 342 Mont. 1, 180 P.3d 1102.

¶7     Rosling petitioned the District Court for postconviction relief.  Rosling argued that Hood had rendered ineffective assistance of counsel by failing to pursue testing of a latent palm print and failing to object to portions of the State's closing argument.  Rosling argued that Hooks had rendered ineffective assistance of counsel on appeal by failing to raise the

2

district court's denial of Rosling's motion for a mistrial and Rosling's alleged absence from a stage of proceedings. The District Court denied Rosling's petition following an evidentiary hearing in an order issued on August 23, 2011. Rosling appeals.

¶8     We outlined the general facts regarding Rosling's conviction in his direct appeal. *Rosling,* ¶¶ 3-30. The following facts pertain to Rosling's petition for postconviction relief.

Palm Print and Rosling's Access to Evidence

¶9     Police officers took a latent palm print from a bathroom mirror at the victim's apartment while investigating the murder. The officers sent the latent palm print to the Montana Division of Forensic Science Crime Laboratory for testing. A forensic scientist at the lab, Debra Hewitt (Hewitt), investigated the palm print. Hewitt did not receive Rosling's palm print for testing, and so could not compare the two. Hewitt ruled out the possibility of the palm print belonging to the victim. Rosling had insisted that Hood test the palm print to establish the source. Hewitt determined that the palm print did not belong to Rosling three months after Rosling's conviction.

¶10     Hood testified at the PCR hearing that she could not recall whether the State had tried to take Rosling's palm prints for testing. Rosling informed Hood before his trial that he had not entered the victim's bathroom on the day of the murder. Hood testified that she discussed the evidence with Rosling and that he knew her trial strategy. Hood hesitated to pursue the testing of the palm print in light of her concern that the testing could link Rosling to the print and the murder. Hood acknowledged, however, that conclusive evidence that the palm print did not belong to Rosling would have been favorable to his defense.

3

¶11 Rosling further testified that he believed Hood withheld information from him while he was in jail before trial. Rosling claimed that he had requested various documents and videos related to his trial and that Hood failed to provide them. Hood testified that she had expressed concerns to Rosling about "snitches" in jail, and did not allow Rosling to have evidence in his possession while in jail. Hood visited Rosling often while he was in jail. Rosling spoke with another inmate about his case after he was transferred to the jail's general population. Hood disapproved of Rosling's discussions with potential "snitches."

### Lack of Objections to Prosecution's Misstatements

¶12 The State argued in closing that Rosling admitted to having been "red-handed." This argument misstated Rosling's testimony. The State asked Rosling on cross-examination, "So you were red-handed with blood when you stuck your hand into that brand new ski glove?" Rosling answered, "No, I did not have a red hand." Hood testified that the prosecutor had veered close to, or actually had committed, misconduct by misstating the facts in closing. Hood admitted that she probably should have objected to the "red-handed" remark, but that she did not want to object too much during a closing argument.

¶13 A neighbor of the victim, Rosaline Diehl (Diehl), testified during Rosling's trial that she saw a car and person matching Rosling's description on the morning of the murder. The State argued in its closing that Diehl would gain nothing by lying to the jury. Hood did not object. Hood testified at the PCR hearing that the State's insinuations about Diehl's credibility amounted to prosecutorial misconduct. Hood testified that she did not object,

4

however, based on her strategy to have part of Diehl's testimony—relating to the description of what she saw early the morning of the murder—believed by the jury.

¶14 The State further argued in closing that a beard hair found at the crime scene matched Rosling's mitochondrial DNA. This argument failed to track the testimony of the State's DNA expert, Thomas Fedor (Fedor). Fedor testified that the hair's DNA and Rosling's DNA "are the same in every location except one." Fedor testified that he could not state unequivocally that the hair belonged to Rosling. Hood did not object to the prosecution's statement regarding the DNA. Hood testified at the PCR hearing that the prosecution made the DNA misstatement in its rebuttal closing argument, and that accordingly, she could not counter the DNA statement. Hood also testified that she worried about "the risk of how [another objection] is seen by the jury."

Inadmissible Photos

¶15 Police photographed Rosling after his arrest. These photos showed Rosling's distinctive "SS" and Swastika tattoos. Hood filed a motion in limine to exclude the photos due to their inflammatory and prejudicial nature. The district court granted the motion to exclude the photos.

¶16 The State used PowerPoint to show numerous photos to the jury throughout the trial. During the State's examination of Detective Bryan Fischer, the State published photos to the jury that showed Rosling's tattoos. Hood objected immediately and the District Court admonished the State. The State again in its direct examination published similarly objectionable photos to the jury.

5

¶17 Hood moved for a mistrial based on the publication of the photos to the jury. The State maintained that it inadvertently had published the photos for only a "few seconds." The court denied Hood's motion and determined that the publication was "inadvertent, it was quick, and [the photos] were small in nature." Hood rejected the court's offer to give a curative instruction.

¶18 Hooks testified that he had been aware that the court had denied Rosling's motion for a mistrial and that the jury saw the photos twice. Hooks testified that he did not pursue the issue on appeal due to the fact that he believed Rosling had other, more compelling issues related to the soundness of his conviction. Rosling testified that he did not recall Hooks discussing the mistrial issue with him.

Rosling's Absence

¶19 Rosling also testified that he had not been present for an in-chambers meeting. This meeting involved the defense's intent to call a police officer to impeach Diehl's original statement about what Diehl had seen on the morning of the murder. The trial record does not reflect whether Rosling was present at this in-chambers meeting, or whether he waived his right to be present. Hood did not recall whether Rosling was present. Hooks does not remember discussing the issue with Rosling. Hooks additionally testified that the record was insufficient to pursue on appeal.

STANDARD OF REVIEW

¶20 We review for clear error a district court's findings of fact in postconviction relief proceedings. *Rogers v. State,* 2011 MT 105, ¶ 12, 360 Mont. 334, 253 P.3d 889. We review

6

for correctness a district court's conclusions of law in postconviction relief proceedings. *Rogers*, ¶ 12. We review de novo a claim of ineffective assistance of counsel. *Hamilton v. State*, 2010 MT 25, ¶ 7, 355 Mont. 133, 226 P.3d 588.

DISCUSSION

¶21 *Whether Rosling received ineffective assistance of counsel during his trial.*

¶22 Rosling alleges that Hood provided ineffective assistance of counsel at several stages in his trial. Rosling cites Hood's failure to investigate, test, and present the palm print and Hood's failure to object to statements made by the State during closing arguments.

¶23 We apply the two-part test established in *Strickland v. Washington,* 466 U.S. 668 (1984), to determine whether counsel rendered ineffective assistance. *Rogers*, ¶ 15. A defendant must show that counsel's representation was deficient, and that counsel's deficient representation prejudiced the defense. *Rogers*, ¶ 15. A petitioner for post-conviction relief must prove by a preponderance of evidence that he is entitled to relief. *Rogers*, ¶ 15.

¶24 The fact that a counsel's challenged conduct may be characterized as "strategic" or "tactical" does not excuse ineffective assistance on the part of counsel. *Whitlow v. State*, 2008 MT 140, ¶ 18, 343 Mont. 90, 183 P.3d 861. We analyze instead whether counsel's conduct, regardless of its characterization as "strategic" or "tactical," proved reasonable under the circumstances. Thus, a defendant "must show that a counsel's representation fell below an objective standard of reasonableness" in order to establish deficient performance. *Strickland*, 466 U.S. at 688.

    a.    <u>Exculpatory Evidence</u>

7

¶25 Rosling argues that Hood failed to meet the "overarching duty of a criminal defense counsel." *State v. Henderson*, 2004 MT 173, ¶ 7, 322 Mont. 69, 93 P.3d 1231. This duty consists of advocating on behalf of the defendant, and meeting, testing, and refuting the case of the prosecution. *Henderson,* ¶ 7. Rosling argues that the palm print constituted exculpatory evidence that Hood failed to investigate. Rosling insists that Hood had the duty to investigate, test, and present the palm print.

¶26 The Montana Division of Forensic Science Crime Laboratory did not test the palm print against Rosling's. Hood testified that she did not pursue further testing of the palm print for strategic reasons. Hood argued to the jury in closing that the State had failed to pin the palm print on Rosling. Hood's decision not to investigate further the palm print does not meet the first prong of *Strickland.* Hood decided not to pursue further evidence that may have proven harmful to her client. Hood's decision to avoid a potentially adverse development for Rosling stands as reasonable under the circumstances. The District Court properly concluded that Hood acted well within the parameters of reasonableness.

      b.    <u>Failure to Object to Prosecution's Misstatements</u>

¶27 Rosling argues that Hood rendered ineffective assistance through her failure to object to the State's comments regarding Rosling being "red-handed." Rosling contends that the State's allegation amounted to prosecutorial misconduct, and that Hood's failure to object deprived Rosling of his right to a fair trial.

¶28 Rosling additionally argues that Hood should have objected to the prosecution's reference to Diehl's credibility. Rosling points out that this Court has determined that it is

improper for the State to "offer personal opinions regarding the credibility of a witness." *State v. Daniels*, 2003 MT 247, ¶ 26, 317 Mont. 331, 77 P.3d 224. Hood testified in the PCR hearing that the defense took the position that Diehl was a credible witness.

¶29 Rosling finally contends that Hood rendered ineffective assistance by failing to object to the State's misstatement regarding the DNA evidence as matching Rosling's DNA. The District Court noted the minor nature of the prosecution's misstatement. Fedor testified that Rosling's DNA matched the hair in each sequence but one. Fedor explained that Rosling's DNA could indeed be a perfect match to the hair. Fedor testified that he could confirm that match through further testing. The prosecution's statement thus did not technically misstate the evidence.

¶30 The District Court determined that Hood's decisions not to object to the statements regarding the "red-handed" comment, the question regarding Diehl's testimony, or the DNA understatement were tactical. We agree. The decision to object during an opening or closing argument falls well within the range of permissible professional legal conduct. *Dawson v. State*, 2000 MT 219, ¶ 105, 301 Mont. 135, 10 P.3d 49. Hood testified that she based her decisions not to object during the State's closing argument on the court's reaction to previous objections during closing argument. Rosling has failed to demonstrate that Hood's choice not to object fell below the level of objective reasonableness that could equate to ineffective assistance. *Whitlow*, ¶ 20.

¶31 *Whether Rosling received ineffective assistance of counsel during his appeal.*

¶32 We review claims of ineffective assistance of counsel on direct appeal according to the *Strickland* standard. *Hagen v. State*, 1999 MT 8, ¶ 10, 293 Mont. 60, 973 P.2d 233. Appellate counsel has no obligation, however, to raise every possible non-frivolous issue on appeal. *DuBray v. State*, 2008 MT 121, ¶ 31, 342 Mont. 520, 182 P.3d 753.

a.   Motion for Mistrial

¶33 Rosling argues that Hooks's failure to appeal the district court's ruling on a mistrial motion constituted ineffective assistance of counsel. Hooks admitted that the photo of Rosling represented a legitimate legal basis upon which to appeal. The district court overruled Hood's objection to the State's display of the photo, but offered to give a curative instruction. Rosling's counsel declined the offer. Hooks explained his decision not to raise the issue on appeal, in part, due to the fact that no copy of the photo exists in the district record. The District Court determined that Hooks made a reasonable decision not to pursue the issue on appeal. We agree.

¶34 Hooks raised on direct appeal the issues of the sufficiency of evidence in a circumstantial case and Rosling's ineligibility for parole. Hooks reasonably selected two issues that could have changed Rosling's conviction and sentence. Hooks testified that he narrowed a myriad of issues down to ones he thought were "meritorious issues that merit careful consideration." Hooks acted well within the bounds of reasonableness in his decision not to raise the issue of the court's denial of a mistrial on appeal. *Dubray,* ¶ 31.

b.   Rosling's alleged absence

10

¶35 Rosling additionally argues that Hooks's failure to appeal Rosling's absence from a critical proceeding constituted ineffective assistance. This Court has emphasized repeatedly that Article II, Section 24 of the Montana Constitution expressly guarantees a criminal defendant the right to be present at all stages of his trial. *State v. Price*, 2009 MT 129, ¶ 22, 350 Mont. 272, 207 P.3d 298.

¶36 Hooks explained that he could not establish conclusively on appeal that Rosling had been absent from the meeting in the judge's chambers. The record reflects only who spoke in the in-chamber discussions. Rosling did not speak as he was represented by counsel. The record does not establish who was present.

¶37 Hood testified at the PCR hearing that she could not recall whether Rosling was present. Hood testified, however, that it was her routine and practice to ensure that her clients were present for in-chambers meetings. We agree that the record does not establish whether Rosling was present at the in-chambers meeting. Hooks could not have rendered ineffective assistance of counsel by not pursuing a claim of a Sixth Amendment violation on appeal under these circumstances.

¶38 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON

11

/S/ JIM RICE

Justice James C. Nelson, concurring.

¶39     I concur in the Court's decision.  I write separately to address the parties' discussions about whether the decisions made by Rosling's attorneys were "tactical" and "strategic," and also the failure of postconviction petitioners in general to make proper showings in support of their ineffective assistance claims.

¶40     In *Whitlow v. State*, 2008 MT 140, 343 Mont. 90, 183 P.3d 861, this Court went to great lengths to disavow any further reliance on the so-called "ignorance or neglect" test, which "contemplates a compartmentalization of counsel's challenged acts and omissions as either strategic decisions/trial tactics on one hand or ignorance/neglect on the other." *Whitlow*, ¶ 17.  We observed that under the first prong of the two-part *Strickland* test—i.e., whether counsel's performance was deficient—" 'the defendant must show that counsel's representation fell below an objective standard of reasonableness.' " *Whitlow*, ¶ 14 (quoting *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064).  In other words, " '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.' " *Whitlow*, ¶ 14 (brackets in original) (quoting *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065).

¶41     The "ignorance or neglect" test, we explained, is not consistent with this inquiry into objective reasonableness.  *Whitlow*, ¶ 17.  Critically, we noted that "the fact that counsel's challenged conduct may be categorized as 'strategic' or 'tactical' does not necessarily mean

12

that the conduct was objectively reasonable." *Whitlow*, ¶ 18. Indeed, "[i]t is possible . . . for a strategic choice to be unreasonable—e.g., because it was made after less than complete investigation, and prevailing professional norms would have required further investigation." *Whitlow*, ¶ 18; *see also e.g. Lawhorn v. Allen*, 519 F.3d 1272, 1295 (11th Cir. 2008) ("Tactical or strategic decisions based on a misunderstanding of the law are unreasonable.").

¶42 Accordingly, "the issue is not whether counsel's challenged conduct may be characterized as 'strategic' or 'tactical'; rather, it is whether that conduct—strategic, tactical, or otherwise—was 'reasonable' under prevailing professional norms and in light of surrounding circumstances." *Whitlow*, ¶ 18 n. 4; *accord* Opinion, ¶ 24. For this reason, we overruled the proposition, contained in a number of our prior cases, that defense counsel's trial tactics and strategic decisions cannot be the basis upon which to find ineffective assistance of counsel. *See Whitlow*, ¶ 18 n. 4.

¶43 In reviewing the record and the parties' briefs on appeal, it appears to me that our clarifications in *Whitlow* have largely been lost on Rosling and the State. Notwithstanding *Whitlow*, the State repeatedly characterizes Hood's and Hooks' decisions as "strategic" or "tactical." In response, Rosling cites the relevant portion of *Whitlow* in his reply brief. Nevertheless, much of the discussion in both of his briefs is focused on whether certain of his counsel's decisions were "strategic" or "tactical." And at the postconviction hearing in the District Court, Rosling and the State questioned Hood and Hooks specifically about whether they had "strategic" or "tactical" reasons for their decisions in his case. Such focus is misplaced. "Even if [counsel's] decision could be considered one of strategy, that does

13

not render it immune from attack—it must be a *reasonable* strategy." *Jones v. Wood*, 114 F.3d 1002, 1010 (9th Cir. 1997) (emphasis in original); *see also State v. Harris*, 2001 MT 231, ¶ 22, 306 Mont. 525, 36 P.3d 372 ("When a tactical or strategic reason for defense counsel's alleged deficient performance is apparent in the record on appeal or proffered by counsel in post-conviction proceedings, the court must evaluate whether this underlying reason is 'reasonable' . . . ."), *abrogated in part on other grounds*, *Robinson v. State*, 2010 MT 108, ¶ 12 n. 1, 356 Mont. 282, 232 P.3d 403. Therefore, even assuming, for the sake of argument, that Hood and Hooks had "strategic" and "tactical" reasons for what they did or did not do, the relevant question is whether their conduct "fell below an objective standard of reasonableness." *Whitlow*, ¶ 20. It is not sufficient that counsel had a "strategy." What matters is whether her decision was objectively reasonable "measured under prevailing professional norms and in light of the surrounding circumstances." *Whitlow*, ¶ 20.

¶44 *Whitlow* has been on the books now for over four years, and we have repeated the foregoing standard time and again in numerous cases since *Whitlow*. Yet, defendants continually fail to present evidence of the "prevailing professional norms" against which their counsel's conduct must be measured. Indeed, I do not recall seeing one single case in which such evidence was presented. I cannot imagine that a plaintiff in a medical malpractice action could expect to prevail on her claim without presenting evidence of the standard of care applicable to the defendant physician. Postconviction petitioners, however, by and large proceed on the premise that conclusory criticisms of their counsel's performance—with the convenient benefit of 20/20 hindsight—are sufficient to entitle them

14

to relief. Granted, the postconviction context is distinguishable from the med-mal context in that there are certain obligations applicable to attorneys, and testimony regarding prevailing professional norms would not be needed in such situations. *See e.g. State v. Kougl,* 2004 MT 243, ¶¶ 15-24, 323 Mont. 6, 97 P.3d 1095 (where counsel was faced with an obligatory action, the only question is whether counsel acted accordingly; likewise, where there is "no plausible justification" for what counsel did or did not do, such as failing to request a "viewed with distrust" instruction to the jury, then counsel's performance is per se deficient). But in any event, it is necessary for a postconviction petitioner either to cite legal authority that squarely establishes what his counsel's obligations were under the circumstances or to present testimony establishing what the prevailing professional norms are. Make no mistake, this is "a heavy burden." *Whitlow*, ¶ 21. But that is the nature of postconviction proceedings. As we have stated, there is " 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *Whitlow*, ¶ 21 (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065).

¶45 Since I became a member of this Court in 1993, I have seen ineffective assistance claims climb from a relative few to a point where they are de rigueur after every trial and every appeal. This Court is inundated with ineffective assistance claims—and in far and away most cases, they are an utter and complete waste of the time and resources of this Court, not to mention those of the district courts and the defense and prosecution bars. Certainly no trial is perfect. But the law does not require that a defendant receive a perfect

15

trial,[1] and it is long overdue that the defense bar and self-represented defendants accept that legal principle. Instead of Monday morning quarterbacking defense or appellate counsel with second guesses about their "tactics" and "strategy," an ineffective assistance claim must be grounded in actual evidence that a prevailing professional norm—i.e., the applicable standard of care—was violated. This means that counsel or the self-represented litigant must call an expert witness to the stand and establish what the standard of care is and how trial or appellate counsel violated that standard by what he or she did or did not do. This is a tough burden, especially for the defendant without counsel, but it is meant to be. Every case does not merit an ineffective assistance claim; there simply are not that many constitutionally ineffective attorneys practicing criminal law in this State. Accordingly, as far as I am concerned, given our directive in *Whitlow,* absent that sort of standard-of-care evidence, or a valid "no plausible justification" or "obligatory action" situation (and legitimate cases of this type will be few and far between), it will be my recommendation to the Court that the ineffective assistance claim be summarily dismissed.

¶46    In the present case, I am not persuaded that Rosling has overcome the presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Whitlow,* ¶ 21. Rosling has not demonstrated that either of his attorneys was faced with an

---

[1] *Brown v. United States*, 411 U.S. 223, 231-32, 93 S. Ct. 1565, 1570-71 (1973) ("A defendant is entitled to a fair trial but not a perfect one, for there are no perfect trials." (brackets and internal quotation marks omitted)); *accord Michigan v. Tucker*, 417 U.S. 433, 446, 94 S. Ct. 2357, 2365 (1974); *Lutwak v. United States*, 344 U.S. 604, 619, 73 S. Ct. 481, 490 (1953); *State v. Gillham*, 206 Mont. 169, 182, 670 P.2d 544, 551 (1983); *State v. Flamm*, 165 Mont. 128, 134, 526 P.2d 119, 122 (1974).

obligatory action and failed to act accordingly. Rosling has not shown that there was "no plausible justification" for what counsel did or did not do. And Rosling has not presented evidence of the prevailing professional norms by which his attorneys' alleged acts and omissions are to be judged. In these circumstances, the District Court would have been fully justified in summarily dismissing Rosling's petition.

¶47    I concur.

/S/ JAMES C. NELSON

17