No. 02-491

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 75

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JUSTIN DALE BECKER,

Defendant and Appellant.

APPEAL FROM:     District Court of the Eighth Judicial District,
In and for the County of Cascade, Cause No. BDC 01-117
The Honorable Julie Macek, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Kristina Guest, Assistant Appellate Defender, Helena, Montana

For Respondent:

Honorable Mike McGrath, Montana Attorney General, John Paulson,
Assistant Attorney General, Helena, Montana; Brant Light, Cascade County
Attorney, John Parker and Joel Thompson, Deputy County Attorneys, Great
Falls, Montana

Submitted on Briefs:  January 27, 2004

Decided:  March 29, 2005

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Justin Dale Becker appeals his conviction in the District Court for the Eighth Judicial District, Cascade County, of criminal possession of dangerous drugs, accountability for the criminal production or manufacture of dangerous drugs, and criminal possession of precursors to dangerous drugs. We affirm in part, reverse in part and remand for further proceedings consistent with this Opinion.

¶2 We restate Becker's issues on appeal as follows:

¶3 1. Whether Becker's convictions for criminal possession of dangerous drugs and criminal possession of precursors to dangerous drugs in addition to criminal production or manufacture of dangerous drugs by accountability violated his double jeopardy protections under the United States and Montana Constitutions and under § 46-11-410, MCA.

¶4 2. Whether Becker's sentence for criminal possession of dangerous drugs is twice the statutory maximum.

¶5 3. Whether Becker's sentence for criminal production or manufacture of dangerous drugs by accountability is illegal.

**Factual and Procedural Background**

¶6 On the morning of March 16, 2001, Mike Smith went to the home of his estranged wife, Nora. Upon entering the garage, Mike discovered what he suspected was a methamphetamine lab which he immediately reported to the Great Falls Police Department. Thereafter, several law enforcement officers set up surveillance of the home and garage. The officers observed Becker and Huston Curran moving items from the house into the garage

2

and then loading items into the trunk of a white Ford Taurus owned by Sharon Olson. After loading the car, Becker, Curran and Olson got into the car and drove away. The officers stopped the car a short distance from the house. Becker was found to be carrying several pairs of rubber gloves, several pairs of athletic gloves, and a glass pipe with a rubber tube used for smoking methamphetamine. In addition, Becker's clothing was wet and emitted a chemical odor. One of the officers who touched Becker had a physical reaction and was required to undergo decontamination.

¶7 After obtaining a search warrant for Smith's home and garage and Olson's car, officers found items they believed to be consistent with the production of methamphetamine and a mason jar with a solvent at the top that contained methamphetamine. Based on these findings, the State charged Becker with criminal production or manufacture of dangerous drugs by accountability in violation of §§ 45-2-302(3) and 45-9-110, MCA (1999), and felony criminal possession of dangerous drugs in violation of § 45-9-102, MCA (1999). The State also charged Smith, Olson and Curran with numerous drug offenses.

¶8 On June 22, 2001, Becker filed a motion to suppress all of the evidence obtained by the officers on the grounds that the search warrant application did not adequately establish the reliability and credibility of the informant; the search warrant application was legally invalid because it contained inaccurate and misleading information; the search warrant application lacked probable cause; the officers lacked particularized suspicion to stop Olson's car; and the statements made by Olson at the time of the traffic stop were taken in

violation of her right to remain silent. The District Court denied Becker's motion to suppress after conducting a hearing on the matters raised in the motion.

¶9 The District Court had set Becker's trial to begin on November 19, 2001, however, six days prior to that date, the State filed an Amended Information adding the charge of criminal possession of precursors to dangerous drugs in violation of § 45-9-107(1)(n), MCA (1999). Defense counsel subsequently filed a motion to dismiss this charge as a violation of the prohibition against double jeopardy claiming that the course of conduct supporting this charge and the charge of criminal production or manufacture of dangerous drugs was the same. Defense counsel relied on *Blockburger v. United States* (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306, for this argument. However, defense counsel made no argument regarding the specific protections against double jeopardy provided by the Montana Constitution or § 46-11-410, MCA. The District Court denied Becker's motion and the case proceeded to trial. The jury convicted Becker on all three charges.

¶10 Prior to his sentencing hearing, Becker filed a Sentencing Memorandum in which he argued that the maximum sentence he could receive for the charge of criminal production or manufacture of dangerous drugs by accountability was six months incarceration in the county jail. Becker contended that there was no penalty in the statutes for a first-time offense of manufacturing methamphetamine. Thus, he argued that § 46-18-212, MCA, a sentencing default statute, applied. Becker also filed an objection to the State seeking to sentence him as a persistent felony offender.

¶11 At sentencing, the District Court rejected Becker's sentencing argument and determined that pursuant to § 45-9-110(4), MCA, it could, and did, sentence Becker to ten years in prison for the charge of criminal production or manufacture of dangerous drugs by accountability. The court also sentenced Becker to ten years in prison for the charge of criminal possession of dangerous drugs and five years in prison for the charge of criminal possession of precursors to dangerous drugs. The court ordered that all of the sentences were to run consecutively. In addition, the court declared Becker to be a persistent felony offender, but chose not to sentence him as such. Becker appeals his conviction and sentence.

**Issue 1.**

¶12 *Whether Becker's convictions for criminal possession of dangerous drugs and criminal possession of precursors to dangerous drugs in addition to criminal production or manufacture of dangerous drugs by accountability violated his double jeopardy protections under the United States and Montana Constitutions and under § 46-11-410, MCA.*

¶13 Becker argues on appeal that he should only have been convicted of the charge of criminal production or manufacture of dangerous drugs by accountability because the other two charges were part of the process of manufacturing methamphetamine and were included within the manufacturing charge. He claims that his convictions for possession of precursors and possession of methamphetamine in addition to his conviction for production or manufacture of methamphetamine violated his federal and state constitutional protections and his state statutory protection against double jeopardy.

¶14 A district court's decision to deny a defendant's motion to dismiss on the basis of double jeopardy presents a question of law that this Court reviews on appeal to determine

5

whether the district court's interpretation of the law is correct. *State v. Beavers*, 1999 MT 260, ¶ 21, 296 Mont. 340, ¶ 21, 987 P.2d 371, ¶ 21 (citing *State v. Barker* (1993), 260 Mont. 85, 88, 858 P.2d 360, 362; *Steer, Inc. v. Department of Revenue* (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603).

¶15     Becker concedes on appeal that his motion to dismiss in the District Court dealt exclusively with his federal constitutional rights and that he did not address the double jeopardy protections provided by the Montana Constitution or Montana's statutory protection against double jeopardy found at § 46-11-410, MCA, which provides:

> **Multiple charges.** (1) When the same transaction may establish the commission of more than one offense, a person charged with the conduct may be prosecuted for each offense.
> (2) *A defendant may not, however, be convicted of more than one offense if:*
> *(a)  one offense is included in the other;*
> (b)  one offense consists only of a conspiracy or other form of preparation to commit the other;
> (c)  inconsistent findings of fact are required to establish the commission of the offenses;
> (d)  the offenses differ only in that one is defined to prohibit a specific instance of the conduct; or
> (e)  the offense is defined to prohibit a continuing course of conduct and the defendant's course of conduct was interrupted, unless the law provides that the specific periods of the conduct constitute separate offenses. [Emphasis added.]

¶16     Additionally, Becker concedes that he did not object on double jeopardy grounds in the lower court that the offense of possession of methamphetamine was included within the offense of production or manufacture of methamphetamine. Instead, his double jeopardy

argument was based on the claim that the offense of possession of precursors was included within the offense of production or manufacture of methamphetamine.

¶17 The State argues that because Becker raised a statute-based double jeopardy theory for the first time on appeal, this Court should decline to address the new theory under the Court's discretionary power of plain error review or through Becker's claims of ineffective assistance of counsel. We agree with the State that plain error review is inappropriate in this case, however, we conclude that it is appropriate to analyze this case under Becker's ineffective assistance of counsel claim.

¶18 A criminal defendant is denied effective assistance of counsel if his counsel's conduct falls short of the range reasonably demanded in light of the Sixth Amendment to the United States Constitution and counsel's failure is prejudicial. *State v. Rose*, 1998 MT 342, ¶ 12, 292 Mont. 350, ¶ 12, 972 P.2d 321, ¶ 12 (citing *State v. Chastain* (1997), 285 Mont. 61, 63, 947 P.2d 57, 58, *overruled on other grounds by State v. Herrman*, 2003 MT 149, 316 Mont. 198, 70 P.3d 738; *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674). Because claims of ineffective assistance of counsel are mixed questions of law and fact, this Court uses *de novo* review. *State v. Turner*, 2000 MT 270, ¶ 47, 302 Mont. 69, ¶ 47, 12 P.3d 934, ¶ 47 (citations omitted).

¶19 As Becker points out in his brief on appeal, the standard of care reasonably demanded of trial counsel required counsel to evaluate the statute under which his client was charged and advise Becker accordingly. *Kennedy v Maggio* (5th Cir. 1984), 725 F.2d 269, 270-72. "'[A]lthough counsel need not be a fortune teller, he must be a reasonably competent legal

historian. Though he need not see into the future, he must reasonably recall (or at least research) the past. . . .'" *Kennedy*, 725 F.2d at 272 (quoting *Cooks v. United States* (5th Cir. 1972), 461 F.2d 530, 532). *See also United States v. Streater* (D.C. Cir. 1995), 70 F.3d 1314, 1321 (counsel's erroneous advice on a critical point "cannot be excused as a strategic or tactical judgment, but could have sprung only from a misunderstanding of the law."); *Hill v. Lockhart* (8th Cir. 1989), 877 F.2d 698, 703, *affirmed after rehearing at* 894 F.2d 1009 (8th Cir. 1990), *cert. denied*, 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 767 (1990) (counsel failed "to ascertain, through minimal research," the applicable statute in issue and to advise the client accordingly); *Howard v. State* (Ark. 1990), 783 S.W.2d 61, 62 (counsel rendered ineffective assistance when he advised his client based on a review of outdated statutes, and was unaware of the current statutes).

¶20    In the present case, Becker's trial counsel filed a motion to dismiss the precursor charge, but failed to include in the motion the charge of possession of dangerous drugs. Further, trial counsel relied only upon the *Blockburger* test and failed to recognize the protections provided by the Montana Constitution and particularly by § 46-11-410, MCA. Hence, we conclude that counsel's failure to include all of the relevant charges in his motion to dismiss and, in particular, to rely on the proper statutory grounds for dismissal, constitutes deficient performance under the first prong of *Strickland*.

¶21    As to the second prong, we conclude that Becker was indeed prejudiced by counsel's deficient performance. A criminal defendant must "establish only that there is a reasonable probability that but for counsel's unprofessional errors the result of the proceeding would

8

have been different." *Rose*, ¶ 19 (citing *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068).

Here, Becker would have been sentenced to a lesser term had counsel made the appropriate

argument regarding the lesser-included offense under § 46-11-410, MCA, rather than under

the *Blockburger* test.

¶22     Previously, when considering whether an offense is included in another offense, this

Court turned to the *Blockburger* test:

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

*Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182. However, this Court determined in *State v.*

*Beavers*, 1999 MT 260, ¶ 27, 296 Mont. 340, ¶ 27, 987 P.2d 371, ¶ 27, that the use of the

*Blockburger* test is inappropriate in an included-offense analysis because Montana has

statutorily defined what constitutes an included offense and *Blockburger* may unnecessarily

confuse the issue. In Montana, an "included offense" means an offense that:

> (a) is established by proof of the same or less than all the facts required to establish the commission of the offense charged;
> (b) consists of an attempt to commit the offense charged or to commit an offense otherwise included in the offense charged; or

9

(c) differs from the offense charged only in the respect that a less serious injury or risk to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission.

Section 46-1-202(9), MCA.

¶23 Because the production or manufacture of a dangerous drug cannot be a criminal act in and of itself until the drug is created, the State had to first prove that Becker or one of his codefendants possessed methamphetamine in order to convict Becker on the charge of producing or manufacturing that same methamphetamine. This Court considered a similar situation in *State v. Peterson* (1987), 227 Mont. 503, 741 P.2d 392. In that case, the defendant was convicted of possession of dangerous drugs and possession of dangerous drugs with intent to sell. Relying on § 46-11-502, MCA (renumbered as § 46-11-410, MCA, in 1991), we held that a defendant may not be convicted of both offenses if one offense is included within the other. *Peterson*, 227 Mont. at 507, 741 P.2d at 395. We explained in *Peterson* that the offense of criminal possession of dangerous drugs with intent to sell requires proof of each relevant element of criminal possession along with the additional element of intent to sell. *Peterson*, 227 Mont. at 507, 741 P.2d at 395. In like manner, in the case *sub judice*, the offense of criminal production or manufacture of dangerous drugs requires proof of each relevant element of criminal possession along with the additional element of production or manufacture of the dangerous drug.

¶24 Therefore, we hold that, §§ 46-1-202(9)(a) and 46-11-410(2)(a), MCA, read together, bar Becker's conviction for both criminal possession of dangerous drugs and criminal production or manufacture of dangerous drugs by accountability since the former is a lesser-

10

included offense of the latter. The same cannot be said, however, for Becker's conviction for possession of precursors to dangerous drugs because a defendant who processes methamphetamine by cutting or diluting it with some inert ingredient commits the offense of criminal production or manufacture of dangerous drugs without necessarily possessing any of the chemical precursors listed in § 45-9-107, MCA.

¶25     When a criminal defendant is improperly convicted of two offenses arising out of the same transaction, the remedy for the ensuing violation of double jeopardy is to reverse the conviction for the lesser-included offense only and to remand for re-sentencing. *State v. Peterson* (1987), 227 Mont. 511, 512-13, 744 P.2d 870, 870-71 (modifying earlier *Peterson* decision as to remand for new trial). Accordingly, we affirm Becker's convictions for criminal production or manufacture of dangerous drugs by accountability and criminal possession of precursors, and we reverse Becker's conviction for criminal possession of dangerous drugs. The sentence heretofore imposed by the District Court is vacated and the District Court is ordered to resentence the defendant solely on the convictions here affirmed, after notice and hearing with respect to the resentencing.

**Issue 2.**

¶26     *Whether Becker's sentence for criminal possession of dangerous drugs is twice the statutory maximum.*

¶27     Because we determined in the previous issue that the charge of criminal possession of dangerous drugs is a lesser-included offense of the charge of criminal production or manufacture of dangerous drugs, we reversed Becker's conviction for criminal possession

11

of dangerous drugs. Consequently, the issue of whether Becker was correctly sentenced for that charge is moot.

**Issue 3.**

¶28    *Whether Becker's sentence for criminal production or manufacture of dangerous drugs by accountability is illegal.*

¶29    Becker argues that his ten-year sentence for criminal production or manufacture of dangerous drugs is illegal because § 45-9-110, MCA, the statute governing this offense, does not set forth a punishment for a first-time offense of production or manufacture of methamphetamine. Becker therefore maintains that no statutory authority existed for the ten-year sentence and the maximum sentence he could receive was six months incarceration in the county jail.

¶30    This Court reviews criminal sentences only for legality–i.e., to determine whether the sentence is within the parameters provided by statute. *State v. Montoya*, 1999 MT 180, ¶ 15, 295 Mont. 288, ¶ 15, 983 P.2d 937, ¶ 15.

¶31    The punishment for the offense of criminal production or manufacture of dangerous drugs is set forth in § 45-9-110, MCA. Subsection (2) of that statute provides for the punishment of persons convicted of producing or manufacturing certain narcotic drugs or opiates. Subsection (3) of that statute provides the punishment for persons convicted of producing or manufacturing dangerous drugs included in Schedule I of § 50-32-222, MCA, or Schedule II of § 50-32-224, MCA, who have prior convictions for producing or manufacturing Schedule I or Schedule II drugs. Methamphetamine is listed as a stimulant

12

under Schedule II in § 50-32-224(3)(c), MCA. In the present case, the parties agreed that neither subsection (2) nor subsection (3) applied to Becker. The District Court determined that subsection (4) applied instead. That subsection provides in pertinent part as follows:

> A person convicted of criminal production or manufacture of marijuana, tetrahydrocannabinol, or a dangerous drug not referred to in subsections (2) and (3) shall be imprisoned in the state prison for a term not to exceed 10 years and may be fined not more than $50,000 . . . . A person convicted under this subsection who has a prior conviction that has become final for criminal production or manufacture of a drug under this subsection shall be imprisoned in the state prison for a term not to exceed twice that authorized for a first offense under this subsection and may be fined not more than $100,000.

Section 45-9-110(4), MCA. Becker argues that since the dangerous drugs included in Schedule II (which include methamphetamine) are referred to in subsection (3), under the plain language of the statute, subsection (4) cannot apply to him. Becker therefore maintains that since the penalty for the offense of criminal production or manufacture of methamphetamine is not specified in § 45-9-110, MCA, the provisions of § 46-18-212, MCA, apply. Section 46-18-212, MCA, provides that the court "in imposing sentence upon an offender convicted of an offense for which no penalty is otherwise provided or if the offense is designated a misdemeanor and no penalty is otherwise provided," may sentence the offender to a term of no more than six months in the county jail.

¶32    In its response to Becker's Sentencing Memorandum, the State argued that the phrase "not referred to in subsections (2) and (3)" in § 45-9-110(4), MCA, related back to the word "person" and not to the term "dangerous drug." Since Becker was not a person referred to in subsections (2) and (3), inasmuch as he was not convicted of producing a narcotic and did

13

not have any prior convictions under the statute, the penalty for his conviction would be that provided in subsection (4). Similarly, the District Court interpreted subsection (4) as a catch-all provision that specifies the penalty for those persons convicted under the statute whose penalty is not otherwise provided in subsections (2) and (3).

¶33    While § 45-9-110, MCA, is not a model of clarity, we agree with the District Court and with the State that § 45-9-110(4), MCA, applies in this case. As the State argues on appeal, any other interpretation would lead to an absurd result because a first-time offender would be subject to only six months in jail while a second-time offender would be subject to a term of not less than twenty years nor more than life imprisonment.

¶34    Nevertheless, even if Becker were correct that the penalty for producing methamphetamine is not specified in § 45-9-110(4), MCA, the default penalty statute would be § 46-18-213, MCA, not § 46-18-212, MCA, as Becker contends. A violation of § 46-9-110, MCA, carries penalties in excess of one year in prison and must therefore be considered a felony. Section 46-18-213, MCA, provides for a term of ten years in the state prison with respect to offenses designated as a felony where no penalty is otherwise provided.

¶35    Accordingly, we hold that the District Court did not err in sentencing Becker to ten years in Montana State Prison for his conviction of accountability for criminal production or manufacture of dangerous drugs.

¶36    That said, the dissent has raised several contentions that deserve a response. First, the dissent faults the Majority's Opinion for reviewing the merits of this case on direct appeal by way of Becker's ineffective assistance of counsel claim rather than through postconviction

14

relief. We agree with the dissent that, in most cases, when the record does not fully explain why counsel took a particular course of action, the matter is best-suited for postconviction relief because it may involve trial strategy or a tactical decision. However, we conclude that in the case before us on appeal, no trial strategy or tactical decision can excuse an error this fundamental.

¶37 In *State v. Jefferson*, 2003 MT 90, 315 Mont. 146, 69 P.3d 641, defendant entered a not guilty plea to the charge of attempted deliberate homicide at his arraignment. Defendant subsequently entered into a plea agreement wherein he agreed to plead guilty to one count of felony assault and the State agreed to amend the Information to drop the charge of attempted deliberate homicide. Defendant later withdrew his guilty plea on the felony assault charge and proceeded to trial on the charge of attempted deliberate homicide. *Jefferson*, ¶¶ 10-14. However, at trial, defense counsel admitted in both his opening statement and in his closing argument that defendant was guilty of felony assault. *Jefferson*, ¶¶ 45-46.

¶38 We determined in *Jefferson* that counsel's remarks had the effect of entering a plea for defendant without his consent. *Jefferson*, ¶ 50. Hence, we held that because there was no plausible justification for counsel's conduct under the circumstances, counsel's admission could not be considered a trial strategy or tactical decision, and the issue was appropriate for review on direct appeal. *Jefferson*, ¶ 50.

¶39 Similarly, in the instant case, there is no trial tactic or strategy that would permit defense counsel to allow his client to be charged and convicted of more crimes than are

proper. Furthermore, if prosecutors in Montana are charging defendants with both criminal production or manufacture of dangerous drugs and criminal possession of those same dangerous drugs, then we need to address that issue and make sure the practice is stopped.

¶40 Second, the dissent points out that defense counsel did raise a statute-based double jeopardy argument in the trial court when he cited to *State v. Tadewaldt* (1996), 277 Mont. 261, 922 P.2d 463, and *State v. Wells* (1983), 202 Mont. 337, 658 P.2d 381, in his brief in support of his motion to dismiss for violation of the prohibition against double jeopardy. The dissent then assumes that since defense counsel cited to these two cases, counsel must have been aware of the statutory provisions which govern the charging of offenses and that because counsel's reasons for not making an argument based upon § 46-11-410, MCA, are not spelled out in the record, the matter may not be reviewed on direct appeal.

¶41 On the contrary, defense counsel incorrectly cited *Tadewaldt* for the proposition that "[t]he double jeopardy clause of the State of Montana provides greater protection than the U.S. constitution." What this Court actually said in *Tadewaldt* was that "§ 46-11-504(1), MCA, affords criminal defendants greater protection from double jeopardy than is provided under *Blockburger*. . . ." *Tadewaldt*, 277 Mont. at 268, 922 P.2d at 467. In a similar fashion, defense counsel did not rely on *Wells* for its analysis of § 46-11-502, MCA (later renumbered as § 46-11-410, MCA, the statute we relied on in this case regarding prohibiting multiple charges for lesser-included offenses). Because counsel completely missed that argument, it is not appropriate to assume, as the dissent does, that counsel was aware of the statutory provisions which govern the charging of offenses.

16

¶42 Third, the dissent points to this Court's discussion in *State v. White*, 2001 MT 149, ¶ 20, 306 Mont. 58, ¶ 20, 30 P.3d 340, ¶ 20, wherein we stated that "[o]nly when the record will fully explain why counsel took, or failed to take, action in providing a defense for the accused may this Court review the matter on direct appeal." However, this Court also stated in *White* that

> [g]enerally an alleged failure to object to the introduction of evidence, or to object to the testimony of a witness, or object to prosecutorial misconduct at trial has been deemed record-based, and therefore appropriate for direct appeal.

*White*, ¶ 15. As we noted in our Opinion, defense counsel failed to object on double jeopardy grounds in the lower court that the offense of possession of methamphetamine was included within the offense of production or manufacture of methamphetamine. Instead, his double jeopardy argument was based on the claim that the offense of possession of precursors was included within the offense of production or manufacture of methamphetamine. Counsel's failure to object on the proper grounds is a matter of record as it is shown in his brief in support of his motion to dismiss.

¶43 Furthermore, whether counsel intentionally allowed Becker to be charged with both offenses or inadvertently allowed it, counsel's actions so clearly fell below the reasonable range of professional conduct required that there is no possible justification for them and neither an explanation in the record for counsel's actions nor a postconviction hearing to determine counsel's reasons for his actions is necessary. *See Jefferson*, ¶¶ 49-50.

17

¶44    Affirmed in part, reversed in part, and remanded for further proceedings consistent

with this Opinion.

/S/ JAMES C. NELSON


We Concur:

/S/ JOHN WARNER
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART

Justice Jim Rice dissenting.

¶45    I dissent. I would affirm the conviction without prejudice to the defendant's right to pursue postconviction relief in regard to his claims, as required by the law.

¶46    As the Court correctly notes, the defendant failed to raise his appellate issue before the District Court. There, he sought dismissal of a completely different charge. Although the Court properly concludes that the exercise of plain error review is inappropriate, it nonetheless undertakes review of the newly-raised issue by way of the defendant's ineffective assistance of counsel argument. I respectfully submit that it is inappropriate to do so.

¶47    The record is silent regarding why defense counsel raised the issues and formulated the arguments as he did in the District Court. Although he argued the *Blockburger* test, the record reflects that he also made reference to the Montana Constitution's greater double jeopardy protections and cited to *State v. Tadewaldt* (1996), 277 Mont. 261, 922 P.2d 463, which applied a statute-based double jeopardy analysis, and to *State v. Wells* (1983), 202 Mont. 337, 658 P.2d 381, which also referenced the charging statutes. Thus, the best assumption which can be made from the silent record is that counsel was aware of the statutory provisions which govern the charging of offenses. However, the reason he did not make an argument based upon § 46-11-410, MCA, is not indicated in the record and is therefore unknown.[1]

_____

[1]The Court notes that the State filed an Amended Information six days prior to trial, adding the precursor possession charge. *See* ¶ 9. Without further explanation, this statement may give the erroneous impression that defense counsel was rushed into

¶48    "As we have stated on numerous previous occasion [sic], there is a strong presumption that counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *State v. Notti*, 2003 MT 296, ¶ 6, 318 Mont. 146, ¶ 6, 79 P.3d 289, ¶ 6 (citing *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674).  Further, and determinative here, "'a silent record cannot rebut the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . . *Absent a complete record*, this Court will not speculate on counsel's alleged errors.'" *Notti*, ¶ 7 (quoting *State v. Daniels*, 2003 MT 247, ¶ 41, 317 Mont. 331, ¶ 41, 77 P.3d 224, ¶ 41) (emphasis added).  There is no "complete record" here.

We have repeatedly explained how this Court will determine whether an issue is record-based:

> Though not easily distilled into a formula, the definitive question that distinguishes and decides which actions are record and which are non-record, is *why*? In other words, if counsel fails to object to the admission of evidence, or fails to offer an opening statement, does the record fully explain *why* counsel took the particular course of action? If not, then the matter is best-suited for post-conviction proceedings which permit a further inquiry into whether the particular representation was ineffective. Only when the record will fully explain why counsel took, or failed to take, action in providing a defense for the accused may this Court review the matter on direct appeal.

*State v. White*, 2001 MT 149, ¶ 20, 306 Mont. 58, ¶ 20, 30 P.3d 340, ¶ 20; *see also State v. Harris*, 2001 MT 231, ¶ 21, 306 Mont. 525, ¶ 21, 36 P.3d 372, ¶ 21; *State v. Fields*, 2002

making an incomplete argument.  To the contrary, defense counsel requested a continuance of the trial "so he can research the new charge that has been added to the Amended Information to see if there is a double jeopardy issue."  Minute entry, 11/16/01.  Defense counsel's request was granted and the trial was continued for that purpose.

MT 84, ¶ 32, 309 Mont. 300, ¶ 32, 46 P.3d 612, ¶ 32; *Soraich v. State*, 2002 MT 187, ¶ 22, 311 Mont. 90, ¶ 22, 53 P.3d 878, ¶ 22; *State v. Earl*, 2003 MT 158, ¶ 41, 316 Mont. 263, ¶ 41, 71 P.3d 1201, ¶ 41; *State v. Turnsplenty*, 2003 MT 159, ¶ 17, 316 Mont. 275, ¶ 17, 70 P.3d 1234, ¶ 17; *Notti*, ¶ 8; *State v. Kougl*, 2004 MT 243, ¶ 14, 323 Mont. 6, ¶ 14, 97 P.3d 1095, ¶ 14. Here, the record does not reflect "why" counsel made the particular arguments he did and why he failed to make other arguments, and therefore, under our clear rule, the matter should not be reviewed on appeal.

¶49 The implication of the Court's opinion is that it believes that defense counsel was not fully aware of the applicable law and therefore erred in formulating his argument. However, we have specifically held that this kind of omission is a non-record issue which should be reserved for postconviction proceedings:

> As for those clearly non-record based areas of representation, this Court has identified counsel's failure to adequately investigate, or failure to prepare a defense, or *failure to familiarize him or herself with critical areas of the applicable law.*

*White*, ¶ 18 (emphasis added). We should follow our clear precedent.

¶50 The Court has failed to properly apply the law. I dissent.


/S/ JIM RICE

Chief Justice Karla M. Gray, dissenting.

¶51  After going one way on the ineffective assistance claim at issue here, and then the other, I respectfully dissent from the Court's opinion.  Moreover, while I generally agree with the thrust of Justice Rice's dissent, I disagree that we have clear precedent to follow at this point in time.

¶52  In my view, our jurisprudence has become somewhat scattery and occasionally downright inconsistent in the critically important and oft-reviewed ineffective assistance of counsel realm.  This creates a mine field for all involved in direct appeals of criminal cases, as well as petitioners for postconviction relief, their counsel and the trial courts.  I realize that a "bright line" test may not be altogether possible in cases such as these.  In my view, however, it is important that we remain as consistent as possible in maintaining the distinction between record-based claims of ineffective assistance of counsel--which can be raised via direct appeal--and nonrecord-based claims which can be raised only in postconviction relief proceedings.  For that reason, I set forth below a few of the problems in our case law in hopes that, in a future case, we will once again attempt to revisit this subject in a more global way.  Doing so would be a service to all involved in the administration of criminal justice in Montana.  To some extent, the inconsistencies to which I refer are illustrated in this case by Justice Rice's dissent and the Court's response to that dissent.  Thus, I begin at that point.

¶53     The dissent urges the Court to follow its clear precedents, including our 2001 decision in *White,* ¶ 20, and probably dozens of others, holding that

> the definitive question that distinguishes and decides which actions are record and which are non-record, is *why*? . . . Only when the record will fully explain why counsel took, or failed to take, action in providing a defense for the accused may this Court review the matter on direct appeal.

The dissent then cites to *White*, ¶ 18, for the proposition that we have identified counsel's failure to be familiar with critical areas of the applicable law as a clearly nonrecord-based area of representation.

¶54     The Court responds to the dissent's reliance on *White* by quoting the general statement in ¶ 15 thereof that failures to object to certain matters are deemed record-based and, therefore, appropriate for direct appeal. In my view, the Court's response to the dissent in this regard presents far too narrow a reading of *White*.

¶55     Indeed, there can be no question that a counsel's failure to object is a record-based matter, since the fact of the lack of objection is readily discernable by reviewing the record. *See White*, ¶ 15. The *White* Court proceeded immediately after that point, however, to observe that decisions as to the *timing* and *number* of objections lie within counsel's tactical discretion, thereby generally requiring nonrecord-based information explaining the tactic and consequently barring the question from review on direct appeal. *See White*, ¶ 16. In *White*, ¶¶ 16 through 19, we further discussed numerous other nonrecord matters not properly included in a direct appeal, ending at ¶ 20, with the *why* distinction for whether a matter is or is not record-based. In other words, a failure to object is record-based, but the *reason* for a failure to object is not. Thus, the usual *why* distinction between record- and nonrecord-

23

based matters arises. In my view, *White*--read in its entirety--supports the dissent's view that the issue before us is nonrecord-based and, therefore, must be raised in a postconviction relief proceeding.

¶56    In response to the dissent, the Court also relies on *State v. Jefferson*, 2003 MT 90, 315 Mont. 146, 69 P.3d 641, where counsel admitted in the opening statement and closing argument during his client's trial on the charge of attempted deliberate homicide, that the defendant was guilty of felony assault. We stated that the effect of counsel's statements was to enter a guilty plea without the defendant's consent, and no plausible justification could exist for such a decision. *Jefferson*, ¶¶ 45-46, 50. Thus, we addressed the matter on direct appeal.

¶57    Approximately a year after *Jefferson*, we decided *State v. Audet*, 2004 MT 224, 322 Mont. 415, 96 P.3d 1144. There, the defendant proceeded to trial on misdemeanor resisting arrest and felony assault on a police officer charges. Counsel conceded in opening and closing statements that his client was not contesting the resisting arrest charge. *Audet*, ¶¶ 5-6. In addressing an ineffective assistance claim on that basis on direct appeal, we determined that, while the record confirmed counsel's admissions, the record did not set forth the reasons *why* counsel chose that course of conduct. Consequently, we were unable to determine on direct appeal whether counsel's decision fell outside the parameters of reasonable professional conduct. *See Audet*, ¶ 12. Our only reference to *Jefferson* in *Audet* was a *See* cite indicating generally that cases exist where counsel's actions "so clearly fall below the reasonable range of professional conduct required that neither an explanation for the action

24

in the record or a post-conviction hearing is necessary to explain the reasons." *Audet*, ¶ 14. We did not mention that *Jefferson* reached the opposite result under virtually identical facts; nor did we set forth any analysis distinguishing *Jefferson* from *Audet*.

¶58 These kinds of apparent inconsistencies in our case law on ineffective assistance of counsel are conceivably distinguishable on some tiny factual difference between the cases. On the face of the cases, however, no reasonably intelligent reader could ascertain whether counsel's admissions of the type addressed in *Jefferson* and *Audet* may or may not be raised on direct appeal as a record-based ineffective assistance of counsel claim. Indeed, in retrospect, I can no longer justify joining the Court's "no plausible justification" decision in *Jefferson*.

¶59 Finally, in this regard, I highlight our opinion in *State v Kougl*, 2004 MT 243, 323 Mont. 6, 97 P.3d 1095. The Court does not discuss *Kougl*, but that case further illustrates the miasma we have created in our jurisprudence on ineffective assistance claims and whether they can or cannot be raised on direct appeal. There, we ultimately reversed the defendant's conviction on direct appeal, after concluding that the ineffective assistance claim relating to counsel's failure to request a jury instruction that accomplice testimony be viewed with distrust was properly before us, and that counsel could have had "no plausible explanation" for failing to request the instruction. *See Kougl*, ¶¶ 21, 22, 24 and 27. We first relied on *White* for the proposition that counsel's failure to offer a particular jury instruction is generally not record-based. We went on, however, to determine that whether the reasons

for defense counsel's failure to do so in *Kougl* were or were not of record "is irrelevant," because "there could not be any legitimate reason for what counsel did." *Kougl*, ¶ 15.

¶60 *Kougl*, *White*, *Jefferson* and *Audet* illustrate the mine field in our jurisprudence referenced above. How can appellate counsel ever know whether this Court will stay with the record versus nonrecord distinction? The answer is that counsel cannot know. The result is that good appellate counsel, for ethical reasons and to avoid later claims of ineffective assistance of appellate counsel, will always raise claims of ineffective assistance of trial counsel on direct appeal. The result of that step is that the Court will receive more and more such claims on direct appeal and, in every case, will be forced to proceed with an analysis of whether or not the matter is within the "general rule" or whether some reason can be located to hold that trial counsel rendered deficient performance without ever allowing trial counsel the opportunity to be heard. At the bottom line, the case-by-case approach now gaining steam in our jurisprudence will soon overwhelm the "general rule" and, consequently, weaken the requirement that an appellant must actually establish deficient performance to succeed on an ineffective assistance claim.

¶61 But the mischief will not stop there. In cases where no ineffective assistance claim is raised on direct appeal, district court judges addressing petitions for postconviction relief will struggle mightily to predict whether an ineffective assistance claim "could reasonably have been raised on direct appeal" for purposes of determining whether the claim can be raised in the postconviction arena or is barred pursuant to § 46-21-105, MCA. The number of appeals from trial court decisions in such proceedings necessarily will increase as well,

26

and this Court will have few, if any, yardsticks for considering whether the claim was procedurally barred.

¶62   With respect to the Court, and with full recognition that I joined in many of the cases which moved us away from at least a workable distinction between record-based and nonrecord-based matters, I cannot continue down this path.  We have an obligation to provide guidance to the trial bench and practicing bar.  We are doing just the opposite in our jurisprudence on this subject.

¶63   I would hold that the ineffective assistance of counsel claim in the present case is not record-based.  On that basis, I would dismiss that claim without prejudice to its being raised in a postconviction relief proceeding.  I dissent from the Court's failure to do so.

/S/ KARLA M. GRAY