DA 12-0454

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 321N

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

ANDREW DAVID GOLIE,

       Defendant and Appellant.


APPEAL FROM:    District Court of the Twenty-First Judicial District,
                 In and For the County of Ravalli, Cause No. DC 11-30
                 Honorable Jeffrey H. Langton, Presiding Judge


COUNSEL OF RECORD:

       For Appellant:

          Colin M. Stephens, Smith & Stephens, P.C.; Missoula, Montana

       For Appellee:

          Timothy C. Fox, Montana Attorney General, C. Mark Fowler, Assistant
          Attorney General; Helena, Montana

          William E. Fulbright, Ravalli County Attorney; Hamilton, Montana


                       Submitted on Briefs:  September 26, 2013
                                Decided:  October 29, 2013


Filed:

                     _____
                             Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      Andrew David Golie (Golie) appeals from the Judgment of the Montana Twenty-First Judicial District Court, Ravalli County, finding him guilty of felony witness tampering and sentencing him to twenty years in the Montana State Prison, with five suspended. We affirm.

¶3      In January 2011 a pawn shop in Hamilton, Montana was burglarized. Various items were taken, including a unique necklace with a broken clasp. Law enforcement responded and investigated, but no suspect was identified. In March 2011 the owner of the pawn shop (Dodd) called law enforcement to report that Josh Edmondson (Edmondson) had come into the shop trying to sell the necklace with the broken clasp. Dodd reported that when confronted about the stolen necklace, Edmondson said that a friend named Andrew had given him the necklace, but he did not know Andrew's last name. After being confronted by Dodd, Edmondson called Golie who admitted that the necklace was stolen and told Edmondson that he was stupid for having tried to pawn it. The following day, Golie showed up at Edmondson's house around 10:30 p.m., along with a friend, Wilkins, who made Edmondson nervous. Golie told Edmondson to confess that he stole the necklace. He reminded Edmondson that he knew where Edmondson's child slept, where Edmondson's

dog slept, and where Edmondson lived. Edmondson decided to contact law enforcement because he feared for his family's safety.

¶4 Following the police investigation, Golie was charged with felony intimidation and felony witness tampering. The case was tried to a jury in March 2012. Sasha Brownlee (Brownlee) represented Golie. At the conclusion of the trial, the parties agreed on jury instructions. Among the agreed-upon instructions were Instructions 16 and 17, on witness tampering. Instructions 16 and 17 incorporated a conduct-based definition of the mental state element, set forth in Instruction 18, for the crime of witness tampering. Neither counsel objected to the instructions. The jury had difficulty reaching consensus, but ultimately found Golie guilty of witness tampering and acquitted him of intimidation. The court sentenced him to twenty years in Montana State Prison, with five suspended.

¶5 Golie now appeals, alleging that Brownlee was ineffective for failing to object to the State's mental state instruction for the offense of witness tampering. He contends that a result-based mental state instruction was required. He further alleges that the District Court committed plain error in allowing the flawed instruction and that this Court should exercise plain error review to overturn the District Court's decision. We disagree.

¶6 We recently explained that:

> To make . . . [the determination of whether an IAC claim is more properly raised in postconviction proceedings], we ask 'why' counsel did or did not perform as alleged and then seek to answer the question by reference to the record. If the claim is based on matters outside of the record, we will refuse to address the issue on appeal. Only through a petition for postconviction relief may the record be developed to explain "why" counsel acted as alleged, which

3

then allows a reviewing court to determine whether counsel's performance was ineffective or merely a tactical decision.

*State v. Aker*, 2013 MT 253, ¶ 34, 371 Mont. 491, ___ P.3d ___ (internal quotations and citations omitted). The failure of counsel to offer a particular jury instruction, generally, is a non-record matter. *State v. White*, 2001 MT 149, ¶ 19, 306 Mont. 58, 30 P.3d 340. Failure to object, in some contexts, has been considered record-based, although this Court has also recognized that decisions regarding the "timing and number" of objections are within counsel's tactical discretion. *White*, ¶¶ 15-16.

¶7     The record here simply does not allow us to undertake an adequate review of Golie's IAC allegation and, therefore, he must seek postconviction relief (PCR). It is unclear from the record why Brownlee did not object to the conduct-based "knowingly" jury instruction. Brownlee's actions may well have been taken within her tactical discretion; inquiry into the reasons for her decision may properly occur in PCR. At that time, the District Court may "receive proof of affidavits, depositions, oral testimony, or other evidence . . . [and] order the petitioner brought before the court for the hearing." Section 46-21-201(5), MCA. With regards to the legal argument Golie raises as to the mental state jury instruction, the interests of justice will require he be represented by a public defender, if he qualifies for one, to make sure that issue is fully briefed by both parties. *See* § 46-21-201(2), MCA.

¶8     This Court may discretionarily review claimed errors that implicate a criminal defendant's constitutional rights, even if no contemporaneous objection was made, where failing to review the error might result in a manifest miscarriage of justice, leave unsettled

4

the question of the fundamental fairness of the trial, or compromise the integrity of the judicial process. *State v. Daniels*, 2003 MT 247, ¶ 20, 317 Mont. 331, 77 P.3d 224. Plain error review should be used "sparingly" and "pursuant to narrow circumstances." *Daniels*, ¶ 20. We are not convinced that the mental state jury instruction so undermined the integrity of the proceedings as to require that we exercise plain error review. We have determined to decide this case pursuant to Section I, Paragraph 3(d), of our Internal Operating Rules, which provides for noncitable memorandum opinions.

¶9    Affirmed.

                              /S/ MICHAEL E WHEAT

We concur:

/S/ BRIAN MORRIS
/S/ JIM RICE
/S/ LAURIE McKINNON
/S/ BETH BAKER